28624. BECK *v.* ODEN.

DECIDED FEBRUARY 24, 1941.

*C. B. McCullar,* for plaintiff. *Marion Ennis,* for defendant.

SUTTON, J. Joe C. Beck brought suit against John W. Oden, alleging that the defendant is superintendent of the Milledgeville State Hospital, and has acted in excess of his authority and maliciously; that the suit is brought against him in his personal capacity as a physician, and not against the State of Georgia; that the plaintiff has been damaged in the sum of $40,000, because of the acts of the defendant hereinafter set out; that plaintiff was formerly employed at the State sanitarium and has been making efforts to regain employment there; that the defendant has become personally aggrieved towards the plaintiff and does not favorably consider his application; that plaintiff went to Captain J. H. Ennis, a leading citizen of Baldwin County, and asked him to intercede with the defendant, with the view of getting the defendant to give proper consideration to plaintiff's application for employment; that Captain Ennis is a man of much influence and power in Baldwin County; that the defendant, being unable to truthfully explain his lack of proper consideration for the plaintiff, endeavored to justify his misconduct by making the false statements hereinafter set out; that in order to mislead Captain Ennis and injure the plaintiff, and to further any effort to make an excuse or give an alibi for his conduct, the defendant made a false report to him; that on September 13, 1939, the defendant wrote to Captain Ennis that it had been reported to him by the plaintiff's wife that the plaintiff had epileptic convulsions, and that it was the personal opinion of the defendant that the plaintiff was an epileptic; that being epileptic and having epileptic convulsions simply means, in ordinary language, that plaintiff has epileptic fits and is a crazy person; that the plaintiff has had no epileptic attacks of any kind, and the defendant's statements to that effect were false; that the plaintiff's wife has never stated to the defendant that the plaintiff had epileptic convulsions, and such a statement by the defendant is likewise false; that to be held up to the public as a man who has epileptic fits is damaging to the plaintiff, is damaging to his reputation, makes him be shunned by his friends, and damages him in getting employment or holding a job; that the defendant made these false statements

deliberately and maliciously, and with knowledge of their falsity, and with an utter disregard of the plaintiff's welfare or rights; that there was no probable cause or justification for the defendant making any such statement or writing any such letter; that the letter and the statements contained therein are a libel, and the writing of said letter to Captain Ennis constituted publication thereof; that about the same time the defendant made similar oral statements which were slanderous; that said words are additionally actionable in that the defendant is a licensed and practicing physician, and he made said statements upon the representation that he was the patient's physician, that even if said condition was true, the defendant is guilty of malpractice and improper conduct in publishing any such statement of a patient's condition, and that he should be heavily penalized by the infliction of punitive and actual damages in order to deter any other such misguided doctor from ever again doing anything in this State savoring of this sort of thing; that the plaintiff is not suffering with any of the diseases attributed to him by the defendant; that the statements contained in said letter, and orally made, are deliberately false. and were made by the defendant with the deliberate intention of maliciously injuring the plaintiff in his reputation and in his business and in his home, that said malicious statements have caused him great damage, much humiliation and much suffering; that the defendant breached the confidential relation of patient and physician when he made any comment to a third party or others about the plaintiff's alleged physical condition, and his conduct should be brought to the attention of the proper authorities in this State and his license to practice medicine in Georgia be revoked forthwith; that plaintiff could not have prevented the damages occasioned by the defendant's negligence and misconduct after the same became apparent to him; that the defendant dictated said letter to a stenographer in his office in the presence of other parties, and Captain Ennis showed said letter to other parties; that said false libel and slanderous statements have been generally circulated in the county among the general public; and that it is actionable per se for the defendant to accuse the plaintiff of being crazy and having fits. Judgment was prayed for $25,000 as actual damages, $14,500 as punitive damages, and $500 as nominal damages, and for a total of $40,000 as damages.

The defendant demurred to the petition, on the grounds that no cause of action was set forth against him; that the alleged libelous and slanderous statements were made on privileged occasion, and therefore, as a matter of law, are not actionable; that there was no publication of the alleged libelous and slanderous statements, and therefore, as a matter of law there is no right of action; that the alleged libelous and slanderous statements being solicited and induced by inquiry on the part of the plaintiff through his authorized agent are, as a matter of law, not actionable. The court sustained the demurrer, and the exception is to that judgment.

The plaintiff seeks to recover for an alleged libel by reason of false, malicious, and defamatory statements made in a letter written by the defendant to one whom the plaintiff had asked to intercede for him in getting reinstated as an employee in the Milledgeville State Hospital. It is inferable from the petition that the desired intercessor complied with the plaintiff's request, but that the defendant, the superintendent of the hospital, "being unable to truthfully explain his lack of proper consideration for the plaintiff, endeavored to justify his misconduct by making" false statements, in that on September 13, 1937, the defendant wrote to the intercessor that it had been reported to him by the plaintiff's wife that the plaintiff had epileptic convulsions, and that it was the personal opinion of the defendant that the plaintiff was an epileptic, all of which was alleged to be untrue, damaging to his reputation, making him shunned by his friends, and damaging him in his efforts to obtain employment or hold a job. It is averred that the writing of said letter constituted a publication, and that at about the same time the defendant made similar oral statements which were slanderous. Other allegations characterizing his conduct as libelous and opprobrious are set out, and it is averred that the letter in question was dictated to the office stenographer of the defendant in the presence of other parties, that the intercessor showed the letter to others, and that the false, libelous, and slanderous statements have been generally circulated in the county among the general public and that it is actionable to accuse the plaintiff of being crazy and having fits. In our opinion it is unnecessary to determine whether or not the statements made were privileged communications, absolute or qualified, to which considerations much of the respective briefs of counsel is devoted. See *Wil-*

*son* v. *Sullivan,* 81 *Ga.* 238, 243 (7 S. E. 274); *Sheftall* v. *Central of Georgia Railway Co.,* 123 *Ga.* 589 (51 S. E. 646); *Atlanta News Publishing Co.* v. *Medlock,* 123 *Ga.* 714 (51 S. E. 756, 3 L. R. A. (N. S.) 1139); *Nicholson* v. *Dillard,* 137 *Ga.* 225 (73 S. E. 382); *Whitley* v. *Newman,* 9 *Ga. App.* 89 (70 S. E. 686); *Ivester* v. *Coe,* 33 *Ga. App.* 620 (3) (127 S. E. 790); *Layson* v. *Odom,* 55 *Ga. App.* 868 (192 S. E. 75); 17 R. C. L. 330, § 76; 17 R. C. L. 341, § 88; Code, §§ 105-709, 105-710. The decision of the case turns on the question whether or not there was a publication as contemplated by the law, and which is an essential ingredient in an action for liable. *Wallace* v. *Southern Express Co.,* 7 *Ga. App.* 565 (67 S. E. 694); *McCravy* v. *Schneer's* 47 *Ga. App.* 703 (171 S. E. 391).

It is elemental that the publication must be made to one other than the person defamed. While the alleged libel was not made to the plaintiff, it was communicated to one whom he had appointed to represent him in ascertaining from the defendant his excuse for not reemploying the plaintiff. The obvious purpose of the appointment was to have an intercession in behalf of the plaintiff and to overcome any objection or excuse that might be offered by the defendant. It is inferable from the petition that the desired intercessor in fact approached the defendant on behalf of the plaintiff. In so doing he was manifestly acting as agent of the plaintiff, his alter ego and his "ears." The defendant answered him by letter, and what was written is charged as libelous and as a publication. Assuming but not conceding that the contents of the letter were not privileged, if malicious, as charged by the plaintiff, we hold that there was no actionable publication. Under the maxim "Volenti non fit injuria" (meaning that to which a person assents is not in law an injury), the plaintiff can not complain where, as here, it is shown that he in fact invited or brought upon himself what he claims is a defamation, made to one who had been placed, as it were, in his own shoes. While no similar case on its facts seems to have been before the appellate courts of this State, we think that the ruling here made is sound and in good conscience, and it is supported by numerous decisions from other jurisdictions. See *Irish-American Bank* v. *Bader,* 59 Minn. 329 (61 N. W. 328); *Patterson* v. *Frazer* (Tex.), 79 S. W. 1077, 1082; *Melcher* v. *Beeler,* 48 Colo. 233 (110 Pac. 181, 139 Am. St.

R. 273); Connors *v*. Collier, 65 Misc. 169 (119 N. Y. Supp. 513); Boling *v*. Clinton Cotton Mills, 163 S. C. 13 (161 S. E. 195); Rivers *v*. Feazell (Tex.), 58 S. W. 2d, 133; Taylor *v*. McDaniels, 139 Okla. 262 (281 Pac. 967, 66 A. L. R. 1246); Chaloupka *v*. Lacina, 301 Ill. App. 173 (21 N. E. 2d, 909); 17 R. C. L. 320, § 61. It is alleged that the defendant also made numerous oral statements to the same effect as those contained in the letter written by him; but as it is not alleged to whom they were made, the petition, construed most strongly against the pleader on general demurrer, must be taken as alleging that these oral statements were made to the recipient of the letter. Nor is the allegation that the reports were generally circulated in the county sufficient to charge the defendant with publishing them. If, as the petition must be taken to allege, they were circulated by the intercessor, the defendant could not be held responsible for such publication. *Howe* v. *Bradstreet Co.,* 135 *Ga.* 564 (69 S. E. 1082, Ann. Cas. 1912A, 214); *McFarlan* v. *Manget,* 179 *Ga.* 17 (4) (174 S. E. 712).

Was there an actionable publication by reason of the fact that the defendant dictated to his office stenographer the contents of the alleged libelous letter? Here again, we think, the plaintiff must be said to have authorized the defendant to use any ordinary method, incidental to his occupation, in answering the intercessor's inquiry. The plaintiff had formerly been employed at the State hospital of which the defendant was superintendent. Inferentially he was acquainted with the fact that the defendant was a very busy man and had to call on others to assist him in the prosecution of his numerous duties. The dictation of a letter to a private stenographer was a matter to be expected. The invitation to the defendant to explain his conduct necessarily included, under the circumstances known to the plaintiff, the dictation of a letter to his personal stenographer. Furthermore, while there is a conflict of authority, still, as stated by the annotator in 18 A. L. R. 778, "The more liberal rule, and the one which seemingly has the support of the weight of modern authority, is that where the communication is made to a servant or business associate in the ordinary and natural course of business, there is no actionable libel." Citing many cases, among which is *Central of Ga. Ry. Co.* v. *Jones,* 18 *Ga. App.* 414 (89 S. E. 429). See also *George* v. *Georgia*

*Power Co.,* 43 *Ga. App.* 596 (159 S. E. 756) ; Biggs *v.* A. C. L. R. Co., 66 Fed. 2d, 87; Rodgers *v.* Wise, 193 S. C. 5 (7 S. E. 2d, 517). While it is alleged that the letter was dictated to the stenographer in the presence of others, it is not alleged that the others heard or understood the subject-matter of the dictation; and construing the petition most strongly against the pleader on general demurrer, it must be treated as if the others did not hear the dictation. Hence no publication is shown as to them. It follows that the petition did not set forth a cause of action, and that the court did not err in sustaining the general demurrer.

*Judgment affirmed. Felton, J., concurs.*

STEPHENS, P. J., dissenting. I am of the opinion that the writing and delivery of the letter by the defendant to Captain Ennis, and the dictation of the letter by the defendant to his stenographer, amounted to publications of the alleged libelous charge contained in the letter. While possibly the publication of such letter, if done without malice or intent to injure the plaintiff and for the legitimate advancement of defendant's own interests, would have been privileged, yet where, as alleged in the petition, the letter contained false statements made deliberately and maliciously and in utter disregard of the plaintiff's rights, as alleged, the petition set out an unjustified publication by the defendant of a libelous charge against the plaintiff. See *Shehan* v. *Keen,* 26 *Ga. App.* 339 (106 S. E. 190), and 36 C. J. 1224. I am of the opinion that the petition set out a cause of action, and that the court erred in sustaining the general demurrer.